UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES GYPSUM COMPANY, 550 West Adams Street Chicago, Illinois 60661 | ) ) ) ) ) | Case No. |
| | ) | Judge |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT** |
| KCG, INC., d/b/a MAGNUM PRODUCTS, 15720 W. 108th Street, Ste. 100 Lenexa, Kansas 66219 | ) ) ) ) ) | **Jury Demand Endorsed Hereon** |
| Defendant. | ) | |

For its complaint against defendant KCG, Inc., d/b/a Magnum Products, plaintiff United States Gypsum Company states:

### The Parties

1. Plaintiff United States Gypsum Company ("USG") is a Delaware corporation with its principal place of business in Chicago, Illinois.

2. Defendant KCG, Inc. ("Magnum") is an Arizona corporation with its principal place of business in Lenexa, Kansas; is registered to conduct business in Ohio; and has appointed Corporation Service Company, 50 W. Broad Street, Ste. 1800, Columbus, Ohio 43215, to be its Ohio statutory agent

{2235664;}

3. KCG, Inc. does business as "Magnum Products" insofar as it uses that name when selling products.

## Jurisdiction And Venue

4. This Court has subject matter jurisdiction over USG's claims under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.

5. This Court also has subject matter jurisdiction over USG's trade dress infringement claim under 28 U.S.C. § 1331 and § 1338 because it arises under federal law.

6. This Court also has supplemental subject matter jurisdiction over USG's claims that do not arise under federal law under 28 U.S.C. § 1367 and 15 U.S.C. § 1121 because those claims are so related to USG's trade dress claim that together the claims are part of the same case or controversy under Article III.

7. This Court has personal jurisdiction over Magnum because it is registered to do business in Ohio, it has an Ohio statutory agent designated to receive service in Ohio, and because it has transacted business in Ohio.

8. Venue is proper under 28 U.S.C. § 1391 because Magnum is subject to personal jurisdiction in this district under Ohio law and, therefore, "resides" in the Northern District of Ohio according to federal law.

## Relevant Facts

### USG's Use And Ownership Of The USG Trade Dress

9. Gypsum wallboard, or drywall, is commonly used in new construction and remodeling. The space between abutting pieces of wallboard is usually taped and covered with joint compound. Joint compound also is used for patching and repairing dents, holes, and defects in drywall. The joint compound, after drying or setting, is sanded to create a smooth surface on the drywall.

10. USG is North America's leading producer of drywall, joint compound, and other related products for the construction and remodeling industries.

11. USG has production facilities and offices throughout the United States, including a joint compound and surfaces facility in Gypsum, Ohio (near Port Clinton).

12. USG manufactures and sells multiple types of joint compound, including setting-type joint compound and drying-type joint compound.

13. Setting-type joint compound cures through a chemical reaction, and typically has a cure time ranging from 20 minutes to several hours, depending on the type used. USG typically sells setting-type joint compound bagged in dry powder form.

14. Drying-type joint compound cures through water evaporation over a time of up to 24 hours. USG typically sells drying-type joint compound in a ready-mix form packaged in buckets.

15. USG markets, distributes, and sells certain of its lightweight, dry powder joint compounds in a white bag that employs a distinctive trade dress as shown in **Exhibit 1**. The trade dress used for the USG products at issue in this case generally comprises: (1) multiple rows of offset dashed red lines at the top of the container and (2) a blue rectangle containing the product name in white text (which may be located below the dashed red lines and/or in other locations on the packaging); and also may include (3) multiple rows of blue text setting forth product information below the blue rectangle and/or (4) a generally rectangular design, which may contain a number indicating the set time for setting-type joint compound. A similar trade dress is used with other of USG's joint treatment products, such as those sold in buckets and boxes as shown in **Exhibit 2**. USG also uses similar, related trade dress on its other joint treatment products.

16. The arrangement, sizes, styles, and colors of the shapes, numbers, and letters of the packaging in which USG markets, distributes, and sells its lightweight joint compound will be referred to here collectively as the "USG Trade Dress." A photograph of a USG product displaying the USG Trade Dress is attached and incorporated as **Exhibit 1**. USG uses variations of the USG Trade Dress in connection with the marketing, distribution, and sales of its lightweight, dry powder joint compounds and its lightweight, ready-mix joint compounds.

17. USG has marketed, distributed, and sold joint compound and related goods under the USG Trade Dress since at least as early as 1993.

{2235664:} 4

18. Since 1993, USG has sold over 2.7 billion pounds of joint compound and related goods under the USG Trade Dress, totaling over $700 million in sales.

19. Since at least 1993, USG has invested substantial resources marketing, advertising, and promoting joint compound products under the USG Trade Dress in the relevant channels of trade throughout the United States.

20. USG owns and has the exclusive right to use the USG Trade Dress in connection with joint compound and related goods by virtue of its development, creation, and use of that trade dress and the timing thereof.

21. USG sells its joint compound and related goods under the USG Trade Dress to retailers and distributors, who in turn sell the product to end users, such as drywall contractors, finishers, painters, and do-it-yourselfers.

22. USG sells its joint compound and related goods under the USG Trade Dress in Ohio, throughout the United States, and internationally.

23. USG's consumers and end users associate the distinctive USG Trade Dress with USG's joint compound and related goods and their high quality.

24. The USG Trade Dress is particularly important to USG's ability to promote and sell its joint compound and related goods because many drywall contractors do not speak English. As a result, many of USG's customers rely upon the colors, styles, and shapes distinctive to the USG Trade Dress to identify particular goods as originating from USG.

25. The USG Trade Dress is not functional because it does not enhance, or otherwise affect, the quality or performance of the USG products that incorporate that trade dress.

### Magnum's Copying Of The USG Trade Dress

26. Like USG, Magnum markets, distributes, and sells joint compound to retailers and distributors, who in turn sell those products to end users, such as drywall contractors, finishers, painters, and do-it-yourselfers.

27. Magnum markets, distributes, and sells its products in many of the same geographic regions and states as does USG, including Ohio.

28. Like USG, Magnum has production facilities and offices throughout the United States, including Ohio.

29. Magnum and USG are direct competitors in the market for joint compound and related goods.

30. Prior to approximately February 2010, Magnum marketed, distributed, and sold its dry powder joint compound in a brown bag that displayed the name "Magnum" in red print backed by a black shadow and a red thunderbolt, which was prominently displayed in the center of the bag. The bag otherwise contained only red and black print. A photograph of the packaging used by Magnum during that period is attached and incorporated as **Exhibit 3**.

31. In or around February 2010, USG learned that Magnum drastically changed the design of the bags in which it marketed, distributed, and sold certain

joint compound products to make them confusing similar to the bags in which USG packages its joint compound and related goods.

32. Specifically, since at least February 2010, Magnum has marketed, distributed, and sold its dry powder joint compound in a white bag, shown in the photograph **Exhibit 4**, that essentially copies the USG Trade Dress. The Magnum bag design comprises: (1) multiple rows of offset dashed red lines at the top of the container; (2) a blue rectangle containing the product name in white text below the dashed red lines; (3) multiple rows of blue text setting forth product information below the blue rectangle; and (4) a generally rectangular figure indicating the number of minutes it takes for the joint compound to set (in the same colors used by USG). The packaging that Magnum now uses to market, distribute, and sell its joint compound and related goods, as shown in **Exhibit 4**, will be referred to collectively here as the "Accused Packaging."

33. The Accused Packaging is confusingly similar to the USG Trade Dress. A side-by-side photograph of the Accused Packaging and the USG Trade Dress, which is attached and incorporated as **Exhibit 5**, highlights the confusing similarity between the two packages.

34. As a result, actual and potential customers have been, and will continue to be, confused as to the origin, source, sponsorship, approval, or association of Magnum's products that use the USG Trade Dress.

35. Upon information and belief, Magnum intentionally copied the USG Trade Dress with the specific intent to trade on USG's goodwill and to mislead

customers into thinking that Magnum's joint compound products are manufactured by USG, endorsed or sponsored by USG, or have the same quality as USG products.

36. By copying the USG Trade Dress, Magnum has caused actual customer confusion, improperly obtained sales, and deprived USG of sales.

## Count One
*Trade Dress Infringement Under The Lanham Act, 15 U.S.C. § 1125*

37. USG incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

38. The USG Trade Dress is valid and legally enforceable.

39. USG owns the USG Trade Dress.

40. The USG Trade Dress is distinctive in the marketplace and has acquired secondary meaning. It identifies USG's products, and it identifies USG as the source of those products to purchasers, users, and others in the relevant channels of distribution throughout the United States.

41. USG has obtained substantial sales of products that incorporate the USG Trade Dress.

42. Magnum intentionally copied the USG Trade Dress.

43. Magnum's Accused Packaging is confusingly similar to the USG Trade Dress.

44. Magnum's use of the Accused Packaging in the marketing, distributions, or sale of joint compound products has caused, and is likely to continue to cause, confusion in the minds of purchasers concerning those products' origin, source, sponsorship, approval, and association.

45. Magnum's use of the Accused Packaging, as described herein, constitutes trade dress infringement under 15 U.S.C. § 1125(a)(1)(A).

46. Magnum has willfully infringed the USG Trade Dress.

47. As a direct and proximate result of Magnum's trade dress infringement, USG has suffered damages in an amount exceeding $75,000.

48. As a direct and proximate result of Magnum's trade dress infringement, USG has suffered, and will continue to suffer, irreparable harm. Such harm will continue unless enjoined by this Court.

## Count Two
*Ohio Deceptive Trade Practices Act, Ohio Revised Code § 4165.01 et. seq*

49. USG incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

50. Magnum's use of the Accused Packaging, as described herein, constitutes an effort by Magnum to pass off its products as products originating from or sponsored by USG.

51. Magnum's use of the Accused Packaging causes the likelihood of consumer confusion and misunderstanding as to the source, sponsorship, approval, or association of its products related to that packaging.

52. Magnum's use of the Accused Packaging constitutes a deceptive trade practice under the Ohio Deceptive Trade Practices Act as defined by Ohio Revised Code § 4165.01 that entitles USG to monetary and injunctive relief under § 4165.03.

53. Magnum's violation of the Ohio Deceptive Trade Practices Act has been willful.

54. As a direct and proximate result of Magnum's commission of a deceptive trade practice, USG has suffered damages in an amount exceeding $75,000.

55. As a direct and proximate result of Magnum's commission of a deceptive trade practice, USG has suffered, and will continue to suffer, irreparable harm. Such harm will continue unless enjoined by this Court.

### Count Three
*Unfair Competition*

56. USG incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

57. Magnum's infringing actions, as described herein, constitute unfair competition in violation of the common law of Ohio.

58. As a direct and proximate result of Magnum's unfair competition under Ohio common law, USG has suffered damages in an amount exceeding $75,000.

59. As a direct and proximate result of Magnum's unfair competition, USG has suffered, and will continue to suffer, irreparable harm. Such harm will continue unless enjoined by this Court.

### Count Four
*Unjust Enrichment*

60. USG incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

61. By wrongfully infringing the USG Trade Dress, Magnum has obtained benefits, including sales and goodwill, that rightfully belong to USG.

62. Magnum has not compensated USG for the benefits that Magnum wrongfully obtained, despite justice and equity requiring it to do so.

63. Magnum has unjustly enriched itself by obtaining and retaining the ill-gotten benefits of its infringing activities.

64. Magnum's receipt of the benefits of its infringing activity constitutes unjust enrichment.

65. As a direct and proximate result of Magnum's unjust enrichment, USG has suffered damages in an amount exceeding $75,000.

66. As a direct and proximate result of Magnum's unjust enrichment, USG has suffered, and will continue to suffer, irreparable harm. Such harm will continue unless enjoined by this Court.

## **Prayer for Relief**

WHEREFORE, USG prays for judgment against Magnum as follows:

1. Compensatory damages in excess of $75,000, with the exact amount to be determined at trial, plus interest.

2. Attorneys' fees.

3. Treble damages.

4. Costs of the action.

5. Preliminary and permanent injunctive relief barring Magnum from:

    A. Manufacturing, distributing, selling, offering for sale, holding for sale, or advertising any goods in association with the

        Accused Packaging or any variation thereof that bears a confusing similarity to the USG Trade Dress;

    B.    Otherwise infringing USG's trade dress rights;

    C.    Otherwise engaging in any deceptive trade practice; or

    D.    Otherwise unfairly competing with USG.

6. An order that Magnum recall from all distribution channels and all retail locations all products in the Accused Packaging or any variation thereof that bears a confusing similarity to the USG Trade Dress.

7. An order that Magnum account to USG for any and all profits derived by Magnum by reason of Magnum's acts as complained of herein;

8. An order that Magnum deliver up for destruction all labels, signs, prints, packages, labels, advertisements, products and any other matter bearing an unauthorized reproduction or imitation of the USG Trade Dress.

9. Such other and further relief as allowed at law or in equity that the Court deems to be appropriate.

        /s/ David T. Movius
        David T. Movius (OH 0070132)
          *dmovius@mcdonaldhopkins.com*
        David B. Cupar (OH 0071622)
          *dcupar@mcdonaldhopkins.com*
        Matthew J. Cavanagh (OH 0079522)
          *mcavanagh@mcdonaldhopkins.com*
        MCDONALD HOPKINS LLC
        600 Superior Avenue, East, Ste. 2100
        Cleveland, Ohio 44114
        T 216.348.5400
        F 216.348.5474

        *Counsel for United States Gypsum Company*

## **Jury Demand**

Plaintiff United States Gypsum Company hereby demands a jury trial for all issues so triable.

> /s/ David T. Movius
> *Counsel for United*
> *States Gypsum Company*